WARDELL COLEMAN v. STATE OF INDIANA.

[No. 574S100. Filed December 29, 1975.]

Robert R. Riggle, of Jeffersonville, for appellant.

Theodore L. Sendak, Attorney General, Robert S. Spear, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of armed robbery and other offenses hereinafter enumerated, all of which arose from the robbery and escape therefrom. His appeal to this Court challenges (1) the sufficiency of the evidence, (2) the legality of a conviction of armed robbery without a charge and conviction of robbery, (3) the admission of certain exhibits into evidence, (4) the validity of a conviction for "armed kidnapping," and (5) the legality of consecutive sentences.

ISSUE I. Sufficiency of the Evidence.

On appeal, we do not reweigh the evidence or the credibility of the witnesses but look only to the evidence supportive of the verdict and reasonable inferences to be drawn therefrom, to see if there is evidence of probative value to establish each element of the offense charged. *Foster* v. *State,* (1974) 262 Ind. 567, 320 N.E.2d 745; *Jethroe* v. *State,* (1974) 262 Ind. 505, 319 N.E.2d 133; *Kimble* v. *State,* (1974) 262 Ind. 522, 319 N.E.2d 140; *Conrad* v. *State,* (1974) 262 Ind. 446, 317 N.E.2d 789.

The evidence, together with the inferences fairly to be drawn therefrom, disclose that the defendant, together with Thurman Nichols, Larry Coleman, James Watkins, and Alphonso Tarver participated in the robbery of the Shamrock Liquor Store, owned and operated by Michael Marra, in Clark County, Indiana.

The robbery was planned by Larry Coleman and Tarver but carried out by the four persons above named and the defendant. Tarver obtained a stolen automobile, and Nichols borrowed one. The five proceeded in the two automobiles to a drive-in restaurant near the liquor store. Larry Coleman remained in the stolen automobile at the restaurant, while the others proceeded to the Shamrock in the second automobile.

Defendant and Watkins, each armed with .38 caliber revolvers entered the store first and Nichols, armed with a

.410 gauge sawed-off shotgun followed a few minutes later. Marra, the owner, and his mother-in-law were the only persons in the store when the robbery occurred. After announcing their purpose and exhibiting their weapons, the bandits took a large sum of money from the premises. Neither Marra nor his mother-in-law resisted. They were taken to a rear room, and their hands were taped together by the bandits, who left with the warning that Marra was not to come out or they would "blow his head off."

Minutes after the defendant and his accomplices left the Shamrock, Marra freed himself and notified the police. Meanwhile, the robbers returned to the restaurant, rejoined Larry Coleman, and the five departed in the stolen vehicle. For reasons not disclosed, they appeared suspicious to two police officers who had been alerted. The policemen signaled for them to stop, and they responded by driving to the shoulder of the road and slowing to a near stop. Just before stopping, however, they returned to the roadway and sped away. As they did so, the defendant fired his .38 caliber pistol at the police car. The police pursued, and the bandits stopped after driving a short distance. The five fugitives spilled out of the vehicle and fired their guns at the police, one of whom was hit by bullet fragments. Defendant and his companions escaped for the time being, and neither of the police officers were able to identify any of them.

The "shoot out" occurred twenty to twenty-five minutes following the robbery, and a few minutes following the "shoot out" the defendant entered the home of the Robinsons, who lived a few blocks away, and threatened to shoot them if they did not cooperate. He held the Robinsons and their two small children at gunpoint and announced that after dark he would take their fifteen year old daughter, who was then at school, as hostage and drive to Louisville, Kentucky, a few miles away. Fearing for the safety of their daughter and also for what might happen to the younger children in the interim, Mr. Robinson volunteered to drive the defendant to Louisville immediately, and the defendant agreed.

Mr. Robinson left the house to start his automobile, the defendant followed and brought the Robinsons' five year old son with him at gunpoint. Mr. Robinson then drove the defendant to Louisville with the child on the back seat and the defendant on the floor of the back seat compartment with his gun pointed at the boy.

Defendant was convicted and sentenced for the following offenses:

(a) Automobile banditry. Ind. Code § 35-12-2-1, Burns 10-4710.

(b) Assault or assault and battery with intent to kill. Ind. Code § 35-13-2-1, Burns 10-401a.

(c) Robbery while armed with a deadly weapon. Ind. Code § 35-12-1-1, Burns 10-4709.

(d) Kidnapping while armed with a deadly weapon. Ind. Code § 35-12-1-1, Burns 10-4709.

(e) Kidnapping. Ind. Code § 35-1-55-1, Burns 10-2901.

With reference to convictions (a), (b) and (c), the defendant asserts that the evidence was insufficient in that neither Marra nor his mother-in-law were able to identify him and that the only evidence identifying him as one of the participants was the testimony of Nichols, an accomplice, who gave State's evidence in return for a dismissal, as to him, of two charges and a suspended sentence upon a guilty plea to a third charge. The defendant's criticism of the evidence is thus addressed to its quality rather than to its quantity.

It is settled that an accused may be convicted upon the uncorroborated testimony of an accomplice. *Black* v. *State,* (1973) 261 Ind. 410, 304 N.E.2d 781; *Stone* v. *State,* (1972) 258 Ind. 435, 281 N.E.2d 799. That Nichols' testimony was induced by a benefit extended to him by the State goes only to its weight, not to its competency. *Foster* v. *State, supra; Jethroe* v. *State, supra; Kimble* v. *State, supra; Conrad* v. *State, supra.*

As to convictions (d) and (e), the thrust of the defendant's argument of insufficiency is (1) that it was Mr. Robinson,

rather than himself, who suggested that he drive the defendant to Louisville and (2) that Mrs. Robinson, upon cross examination, that at the time her husband left with the defendant, she did not feel that he was being kidnapped.

It is of no consequence, under the circumstances, that the trip to Louisville was made at Mr. Robinson's suggestion. He and his family were being held and threatened at gunpoint. He volunteered to do what he did only out of fear of great harm to himself and family. Under these circumstances, his actions cannot be said to have been voluntary but clearly were coerced. The reasonable fear of the use of force or violence, when combined with asportation, is sufficient to sustain a charge of kidnapping. *Johnson* v. *State,* (1974) 262 Ind. 516, 319 N.E.2d 226; *Lewis* v. *State,* (1969) 252 Ind. 454, 250 N.E.2d 358; *Thompson* v. *State,* (1939) 215 Ind. 129, 19 N.E.2d 165.

It also is of no consequence what Mrs. Robinson thought at the time Mr. Robinson and their son were abducted. The crime consisted of forcibly carrying off the victims with the intent to do so. The mental state of the alleged victims was relevant to the issue of whether the asportation was forced or voluntary, but the mental state of Mrs. Robinson, a bystander, was irrelevant. In this connection, it is also noted that Mr. Robinson testified that he did feel "kidnapped."

ISSUE II. Legality of Conviction for Offense of Commission of a Crime (Armed Robbery) While Armed with a Deadly Weapon, without a Charge and Conviction for Robbery.

We have previously held that robbery is a lesser included offense of armed robbery. *Dembowski* v. *State,* (1968) 251 Ind. 250, 240 N.E.2d 815. And that it is not necessary that a person charged with armed robbery be first charged and convicted of robbery. *Moore* v. *State,* (1972) 257 Ind. 584, 276 N.E.2d 840.

ISSUE III. Admissibility into Evidence of State's Exhibits. State's exhibits objected to were as follows:

Exhibit 12. Marlin 30-30 Rifle, blue steel, walnut stock.

Exhibit 13. Three standard unspent .410 gauge shotgun shells.

Exhibit 14. Four unspent .30-.30 caliber rifle shells.

Exhibit 15. Three spent .30-.30 cal. rifle shells; one live .30-.30 cal. rifle shell and 1 spent .410 ga. shotgun shell.

The objections were premised both upon the absence of a connection between the exhibits and the defendant and upon the failure to show a proper chain of custody. We deem it unnecessary to treat each exhibit in detail. As to their connection to defendant, it was shown that the items were picked up off the ground in the immediate vicinity of the place where the defendant and his companions abandoned their vehicle, exchanged gunfire with the police and fled on foot. Although it could not be shown that these exhibits had ever been in the defendant's personal possession, they, nevertheless, were connected to the events of the defendant's flight and relevant to evidence the events constituting the crimes charged and were, therefore, admissible. *Elliott v. State*, (1972) 258 Ind. 92, 279 N.E.2d 207.

With reference to the chain of custody argument, the exhibits in question were shown to have remained in the custody of the Jeffersonville Police Department from the time they were found until they were introduced, except for the rifle and one cartridge for it. The rifle was shown to have been marked and its serial number noted for identification purposes. It was then sent, with the cartridge, to the laboratory in Indianapolis. Upon its return, it was kept by the police department until its introduction. This chain and identification procedure was sufficient for this type of evidence. Defendant would have us apply the strict rules applicable to fungible evidence readily subject to tampering. However, the chain of custody rule applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering or substitution. *Hopper v. State*, (1974) Ind. App., 314 N.E.2d 98;

*Bonds* v. *State,* (1973) 158 Ind. App. 575, 303 N.E.2d 686; Cf. *Pullins* v. *State,* (1970) 253 Ind. 644, 256 N.E.2d 553; *Fletcher* v. *State,* (1970) 253 Ind. 468, 255 N.E.2d 217.

ISSUE IV. Validity of Conviction for "Armed Kidnapping."

Defendant was found guilty of kidnapping and of armed kidnapping. (See Issue II for citations to controlling statutes.) He was sentenced to life imprisonment for the former and thirty years imprisonment for the latter. The latter conviction cannot stand.

We have previously determined this question in *Carter* v. *State,* (1950) 229 Ind. 205, 96 N.E.2d 273, following *Kokenes* v. *State,* (1938) 213 Ind. 476, 13 N.E.2d 524. Those cases involved convictions for robbery and armed robbery growing out of the same robbery. In *Kokenes,* the constitutionality of the armed felony statute was challenged as a double jeopardy violation. We held that the statute merely defined certain new crimes, separate and distinct from those existing previously—the addition of a new element, i.e. being armed with a deadly weapon, being the distinction between the new and the old. We added, however, that it did not follow that a defendant could be convicted for robbery and armed robbery where the same identical robbery was involved.

The guiding principles for determining when multiple offenses arising from the same facts may and may not be charged are set forth below.

"1. When the facts constitute but one offence, though it may be susceptible of division into parts, as in larceny for stealing several articles of property at the same time, belonging to the same person, a prosecution to final judgment for stealing a part of the articles will be a bar to a subsequent prosecution for stealing any other part of the articles, stolen by the same act.

"2. When the facts constitute two or more offences, wherein the lesser offence is necessarily involved in the greater—as an assault is involved in an assault and battery, as an assault and battery is involved in an assault and battery with intent to commit a felony, and as a larceny

is involved in a robbery—and when the facts necessary to convict on a second prosecution would necessarily have convicted on the first, then the first prosecution to a final judgment will be a bar to the second.

"3. But when the same facts constitute two or more offences, wherein the lesser offence is not necessarily involved in the greater, and when the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, then the first prosecution will not be a bar to the second, although the offences were both committed at the same time and by the same act." *State* v. *Elder*, (1879) 65 Ind. 282, 285.

The armed kidnapping conviction is invalid for the additional reason that kidnapping is not encompassed within the armed felony statute. The penalty for kidnapping is life imprisonment, a penalty greater than that provided under the armed felony statute. As was stated by Chief Justice Givan in *Moore* v. *State*, (1972) 257 Ind. 584, 276 N.E.2d 840 at p. 842, "It was the obvious intent of the legislature to make the penalty for commission of a felony while armed bear a direct relationship to the commission of the same felony committed unarmed. We must interpret the statute so as to give operation to that intent. Dunkle v. State, (1961) 241 Ind. 548, 173 N.E.2d 657." The relationship intended to be established by the statute was that a greater penalty should be assessed for armed felonies than for unarmed ones. To include kidnapping within the purview of the statute would be to reduce the penalty rather than to increase it—an absurdity which we do not ascribe to the legislative intent. *State* v. *Rice*, (1956) 235 Ind. 243, 134 N.E.2d 219.

ISSUE V. Legality of Consecutive Sentences.

The conviction for armed kidnapping standing vacated, we are left with guilty verdicts upon charges of assault and battery with intent to kill, automobile banditry, armed robbery and kidnapping. It is difficult to determine from the record of the sentencing whether the life sentence for kidnapping was intended to run concurrently with or consecutive

to the other sentences, we are of the opinion, however, that it must run concurrently.

In the absence of specific statutory authority, consecutive sentencing is not permitted. *Franks* v. *State*, (1975) 262 Ind. 649, 323 N.E.2d 221; *Baromich* v. *State*, (1969) 252 Ind. 412, 249 N.E.2d 30. The statute under which the robbery conviction was obtained does permit consecutive sentences, however, the language limits its application, and it is provided only that a sentence for the armed offense may run consecutively to "* * * any imprisonment that may be adjudged for any *additional* crimes being attempted or committed *at the same time* * * *." (Emphasis ours). The kidnapping, as well as the assault and battery with intent to kill, occurred after the armed robbery had been completed and thus does not meet the criteria of the statute.

We are unable to determine from the record whether the robbery was the felony or attempted felony subsidiary to the automobile banditry charge. If so, the judgment and sentence on the automobile banditry charge must also be vacated, because it rests upon the same criminal act supporting the greater offense of armed robbery. Otherwise, the judgment may stand, and if it meets the statutory requirement, i.e. if it was a crime in addition to the robbery and was attempted or committed at the same time as the robbery, we see no impediment to a sentence therefor running consecutively to the armed robbery sentence. We perceive no advantage to the State, however, as it must nevertheless, run concurrently with the life sentence.

The judgments of the trial court are now affirmed as to the convictions for assault and battery with intent to kill, armed robbery and kidnapping.

The cause is remanded to the trial court with instructions to vacate the judgment and sentence on the conviction of "commission of crime, to-wit: kidnapping, while armed with a deadly weapon," to vacate the judgment and sentence on the conviction of "automobile banditry," if the subsidiary

crime thereof was the robbery that was subsidiary to the conviction of "commission of a crime, to-wit: robbery, while armed with a deadly weapon," and to re-sentence the defendant, if consecutive sentences are, in its discretion, desired and are consistent with this opinion.

Givan, C.J. and Arterburn and Hunter, JJ., concur. DeBruler, J., dissents.

NOTE.—Reported at 339 N.E.2d 51.