Alva L. FUNK, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 79A04–9712–CR–527.

Court of Appeals of Indiana.

Aug. 4, 1999.

Rehearing Denied Sept. 13, 1999.

Alva Leslie Funk, Michigan City, Indiana, Appellant Pro Se.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant Alva L. Funk (Funk), appearing pro se, appeals the trial court's denial of his motion for correction of erroneous sentence and its denial of his motion to set an evidentiary hearing thereon. His challenge involves two charges and convictions for Intimidation, as Class C felonies.

We affirm.

Funk presents two issues for consideration:

(1) Whether the trial court committed reversible error by denying Funk's motion for correction of erroneous sentence, where the charging information, jury verdict forms and abstract of judgment all referred to the nonexistent crime of intimidation while armed with a deadly weapon.

(2) Whether the trial court was required to schedule an evidentiary hearing regarding Funk's motion for correction of erroneous sentence.

The underlying facts of the instant case were set forth in a memorandum decision, *Funk v. State*, 643 N.E.2d 1003 (1994), issued following Appellant's direct appeal of his criminal conviction. We need not restate those facts.[1] Funk filed a motion for correction of erroneous sentence, pursuant to I.C. 35–38–1–15 (Burns Code Ed. Repl.1998), on February 9, 1995.[2] The State responded to the motion on March 8, 1995, claiming the title of the charge in the information was a mere "scrivener's error" and that a lesser included offense was not at issue. Record at 36. On March 13, 1995, the trial court entered an order denying Funk's "motion to modify sentence." Record at 38.

Funk thereafter moved for and was granted leave to withdraw, without prejudice, his motion for correction. A second motion for correction of erroneous sentence was submitted. On June 20, 1997, the State responded anew.

The trial court denied Funk's motion for correction of erroneous sentence on September 8, 1997.[3] In part, the court reasoned as follows:

"[Funk] admits in his own pleadings that the pertinent part of the charging information, including where the State of Indiana alleges that the crime was committed while drawing and using a deadly weapon is true. The language tracks the statute. [Funk] appears to be arguing about what amounts to be a scrivener's error in the title of the information. The Court does not find that the scrivener's error is so egregious that it amounts to fundamental error. The record reflects, including the Court's instructions regarding intimidation, that the Court advised the jury as to what elements the State of Indiana must prove beyond a reasonable doubt in order to convict the petitioner of intimidation.

It is equally true, from the nature of this case, that the evidence reflects that the petitioner was not simply armed with a weapon, but rather drew and used a handgun in the commission of that offense. The testimony included facts that the petitioner pointed a weapon at Officers Kohne and Wallace, as well as other officers, dur-

---

1. On January 18, 1995, the Indiana Supreme Court denied Funk's petition to transfer this decision.

2. I.C. 35–38–1–15 provides:
 "If the convicted person is erroneously sentenced, the mistake does not render the sentence void. The sentence shall be corrected after written notice is given to the convicted person. The convicted person and his counsel must be present when the corrected sentenced is ordered. A motion to correct sentence must be in writing and supported by a memorandum of law specifically pointing out the defect in the original sentence."

3. The order was made effective as of September 2, 1997.

ing the commission of these crimes. The evidence shows that the petitioner was indeed guilty of the crime of intimidation and a scrivener's error does not altar [sic] that fact. The verdict forms used by the Court set forth the crime of intimidation while armed which was the method by which the jury could designate which count they were finding the petitioner guilty. It appears from the record that the jury relied on the elements of the counts as opposed to the title based upon the instructions of the Court. Absent strong evidence to the contrary, jury's [sic] are presumed to follow the Court's instructions.

This court finds no fundamental error issue. Even if it were an issue, this is a matter that should have been raised at trial and then later on in the petitioner's appeal. This issue was not raised, therefore, it is waived." Record at 94–95.

On March 10, 1998, Funk filed a motion to reconsider the ruling.[4]

On March 21, 1995, Funk filed a motion to set hearing and order to produce petitioner. This motion was denied on March 27, 1995. Following formal withdraw of his counsel, Funk filed a second motion requesting an evidentiary hearing on April 18, 1995. He filed several subsequent motions requesting an evidentiary hearing. Request for evidentiary hearing was denied on February 10, 1998. On February 25, 1998, Funk requested relief from the order of denial, citing various state and federal constitutional provisions and Ind. Trial Rule 60(A).[5]

Funk filed a petition for post-conviction relief on November 5, 1997. The State submitted its response in opposition to the petition on November 20, 1997. A hearing on the petition was scheduled for February 27, 1998. Upon Funk's motion, the trial court granted Appellant an extension of time in which to file the record of proceedings. In so doing, the hearing was set aside, with Funk being directed to request another hear-

ing date at the time he filed the record. The record does not reflect that Funk requested another hearing.

Upon appeal, Funk challenges his conviction and sentencing in Counts I and III of the charges against him, Intimidation While Armed With A Deadly Weapon, as Class C felonies. He asserts that no such crime existed under Indiana law, and, thus, his due process rights were violated. The statute under which Funk was convicted in both counts, I.C. 35–45–2–1 (Burns Code Ed. Repl.1998), states in relevant part:

"(a) A person who communicates a threat to another person, with the intent that:

(1) The other person engage in conduct against his will; or

(2) The other person be placed in fear of retaliation for a prior lawful act;

commits intimidation, a Class A misdemeanor.

(b) However, the offense is a:

* * *

(2) Class C felony if, while committing it, the person draws or uses a deadly weapon."

Funk is correct that the statute does not make it an offense to be "armed" with a deadly weapon. To this extent, the title of the information, the jury verdict forms and the abstract of judgment all incorrectly label the crime as "Intimidation While *Armed* With A Deadly Weapon." *See* Record at 65–69 (emphasis supplied).

### I. *Motion for Correction of Erroneous Sentence*

#### A. *Fundamental Error*

 Funk essentially claims the variance constitutes fundamental error which should be reversed. We disagree. A petition for post-conviction relief, not use of a motion to correct erroneous sentence, is the

---

4. Filed pursuant to Ind. Trial Rule 53.4, no hearing was required on the motion to reconsider, which was automatically deemed denied after five days.

5. The motion primarily addressed the trial court's failure to certify three jury instructions as

requested by Funk in his Statement of Evidence, which he submitted to the trial court on October 29, 1997, pursuant to Ind. Appellate Rule 7.2(3)(C). It was essentially a motion to reconsider the trial court's order. As such, it was deemed denied after five days, per T.R. 53.4.

preferred procedure for presenting a sentencing error. *Jones v. State* (1989) Ind., 544 N.E.2d 492, 496. However, a motion to correct erroneous sentence may be used to correct those errors "where the sentence is erroneous on its face." *Id.* A facially defective sentence is one "that violates express statutory authority *at the time* the sentence is pronounced." *Poore v. State* (1993) Ind. App., 613 N.E.2d 478, 480 (emphasis in original). A motion to correct erroneous sentence is proper where the error may be deemed "fundamental." *Jones, supra* at 496. "Such fundamental error would include illegal sentences in violation of express statutory authority or an erroneous interpretation of a penalty provision of a statute." *Id.*

Although incorrect, references by the prosecutor and the trial court to the offense of intimidation while armed with a deadly weapon did not constitute fundamental error. This is so, because Funk's conviction and sentence for intimidation as a Class C felony fell within the express statutory authority granted by I.C. 35-45-2-1. The label applied to the charges may have been facially incorrect, but the substance of the intimidation charges was proper.[6] The charging information reflected all of the statutory elements for committing intimidation as a Class C felony. Further, the evidence presented at trial supported the determination that Funk committed the offenses as described in the charging information.

Funk cites various cases supporting his contention that he was charged and sentenced for a non-existent crime, which constituted fundamental error. In *Young v. State* (1967) 249 Ind. 286, 231 N.E.2d 797, the defendant was convicted of assault and battery with intent to commit the felony of manslaughter. The Indiana Supreme Court noted that Indiana law provided for no such offense, because intent to commit a "felonious homicide" was specifically excluded from the statute in question. *Id.* at 799. The trial court did modify the judgment, replacing the

intended felony of "manslaughter" with that of "aggravated assault." *Id.* However, the Supreme Court observed that, "we cannot ignore a fundamental error apparent on the face of the record.... The judgment rendered does not follow any legal authority, for the sentence of one (1) to ten (10) years under the modified judgment can in no way be justified under any statute." *Id.* (citation omitted).

In *Coleman v. State* (1975) 264 Ind. 64, 339 N.E.2d 51, *disapproved of in part by Elmore v. State* (1978) 269 Ind. 532, 382 N.E.2d 893, 898, the defendant was convicted of, among other things, "armed kidnaping." Our Supreme Court found the conviction invalid, stating that "kidnaping is not encompassed within the armed felony statute. The penalty for kidnaping is life imprisonment, a penalty greater than that provided under the armed felony statute." *Id.* at 56. The Supreme Court further commented, "[t]o include kidnaping within the purview of the [armed felony] statute would be to reduce the penalty rather than to increase it—an absurdity which we do not ascribe to the legislative intent." *Id.* The Court reaffirmed its position in *Moon v. State* (1977) 267 Ind. 27, 366 N.E.2d 1168, noting that, "[i]f kidnaping is not encompassed within the armed felony statute, ... then no such offense as 'armed kidnaping' exists. That being so, a conviction for 'armed kidnaping' is a nullity. Conviction of a non-existent crime is fundamental error."

Funk also refers to *Vandeventer v. State* (1984) Ind.App., 459 N.E.2d 1221, *trans. denied*, in support of his argument. In *Vandeventer*, the defendant was charged with attempted voluntary manslaughter but was convicted of "attempted reckless homicide." At trial, the defendant's counsel tendered and the court gave his instruction informing the jury that the defendant could be convicted of the included offense. Upon appeal, the State conceded that no such offense of "at-

---

**6.** Charging information for Counts I and III differed only in the names of the victims. They provided in relevant part:

"On or about August 10, 1992, in Tippecanoe County, State of Indiana, Alva Leslie Funk did communicate a threat to another person, to wit: [name of victim], with the intent that the said [victim] engage in conduct against his will, said threat being to commit a forcible felony, all while drawing and using a deadly weapon, to wit: a handgun...." Record at 68, 69.

tempted reckless homicide" existed because the attempt statute only applied to "specific intent crimes." *Id.* at 1222. However, the State contended that the defendant's conviction should be upheld under the invited error doctrine, under which a defendant generally may not profit from obtaining an erroneous instruction by thereafter claiming error. We reversed the judgment, stating:

> "There can be no conviction for an offense not defined by statute.... Basic law pronounced by the Supreme Court is explicit; no combination of circumstances can justify the conviction and imprisonment of a defendant of a non-existent offense. A material distinction exists between application of the invited error doctrine to affirm a conviction of an included offense which is statutorily defined, though technically not an included offense, and here, where it would be used to affirm a conviction of a nonexistent offense." *Id.*

Relying upon both *Vandeventer, supra,* and *Moon, supra,* this court in *Anderson v. State* (1996) Ind.App., 674 N.E.2d 184, 188, held, "that [the defendant's] conviction of aggravated battery, ... an offense which was non-existent at the time of commission, constituted fundamental error and must be vacated."

In each of these cases, the defendant was found guilty of and sentenced for a crime that did not exist under any Indiana statute at the time of the conviction and sentencing. In the instant case, the elements of intimidation, as listed in I.C. 35–45–2–1, were contained within the charging information. As we noted in deciding Funk's direct appeal, evidence was sufficient to support his convictions.[7] Because Funk's intimidation convictions were based upon express statutory authority, the incorrect references by the prosecutor and trial court to the offense of "armed" intimidation did not constitute reversible, fundamental error.

### B. Variance

 Funk's argument is more appropriately viewed as one challenging, as prejudi-

cial, the variance between the label of the crimes charged against him and the text of the charging information used by the State, not correction of an erroneous sentence. As such, we note that the record does not indicate whether Funk objected to the variance at trial, as the variance is found in the charging information, jury verdict forms and the abstract of judgment. He did not raise the variance issue in his direct appeal. The issue has thus been waived. *Higgins v. State* (1997) Ind., 690 N.E.2d 311, 314, *reh'g denied* ("Failure to challenge timely an alleged defective charging information results in waiver unless fundamental error has occurred.") Funk should not now be permitted to attack the underlying conviction by masking his objection to the variance—his true argument—in terms of objecting to the denial of his motion to correct an erroneous sentence. Be that as it may, we discuss the merits of the variance argument.

*Jordan v. State* (1987) Ind., 502 N.E.2d 910, is instructive. In *Jordan,* a variance existed between the label and text of the information charging the defendant with forgery. The information was titled, "Count I, Forgery, (Uttering)." *Id.* at 914. However, the text of the information read that the defendant "did unlawfully and with intent to defraud MAKE a written instrument." *Id.* On appeal, the defendant alleged that his due process rights had been violated, because he had been charged with "uttering" a forged information but had been convicted of "making" a forged instrument. The Supreme Court concluded that, when the title of the charging information conflicts with the language of the information's text, the latter controls. *Id.* Thus, the defendant "was charged with making a forged instrument, and convicted of that crime." *Id.* Because the text of the charging information in the instant case reflected the statutory elements of intimidation as a Class C felony, the text controls. That constitutes the offenses with which Funk was charged and convicted.

---

7. Our prior memorandum decision addressed whether evidence was sufficient to show that Funk "pointed" a gun at the police cars pursuing him. *Funk, supra,* slip op. at 12. In order to qualify as intimidation as a Class C felony, the

State was obligated to show that Funk drew or used a deadly weapon. We conclude that in order to have "pointed" a gun at officers in their vehicles, Funk necessarily had to draw and/or use the weapon.

Moreover, as our Supreme Court noted in *McGee v. State* (1986) Ind., 495 N.E.2d 537, 538, "[t]he purpose of an information is to advise the defendant of the particular crime charged so that he can prepare a defense." [8] We must ascertain whether the variance at issue was material, i.e. whether it misled the defendant in the preparation of his defense. *McCullough v. State* (1996) Ind.App., 672 N.E.2d 445, 447–48 (variance between charging information and evidence at trial was immaterial and did not require reversal). We conclude that the variance in question was not material. The information fully informed Funk of the charges against him. He fails to indicate how the difference between the title and text of the information misled him or prejudiced his defense preparation. The text asserted the facts underlying the intimidation charges. Funk was made aware that the State would seek to prove that, on or about August 10, 1992, he communicated a threat to the named victims with the intent that the victims would engage in conduct against their will, which threat was to commit a forcible felony and which was done while Funk drew and used a handgun.[9]

■ We must address whether the variance as contained in the verdict forms and abstract of judgment warrant reversal of Funk's conviction. We conclude that it does not, because the jury which convicted Funk was properly informed of the statutory elements for intimidation as a Class C felony. In its response to Funk's motion for correction of erroneous sentence, the State attached a copy of the instruction on intimidation, as given to the jury in the underlying cause of action. The instruction, in relevant part, provided:

"To convict the defendant [of intimidation], the State must have proved each of the following elements:

The defendant

1. communicated a threat to [victims]

2. with the intent that [victims] engage in conduct against their will

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

\* \* \*

If the State further proved beyond a reasonable doubt that, while committing the offense, the defendant drew or used a deadly weapon, you should find the defendant guilty of intimidation, a Class C felony." Record at 86.

The instruction did not use the term "armed" with a deadly weapon in defining the crime of intimidation. The jury was informed of the proper statutory elements. We may infer that the jury convicted Funk pursuant to the jury instruction, not the label of intimidation used on the verdict form.

We hold that the variance did not constitute fundamental error and did not prejudice defendant in any demonstrable manner. The trial court's denial of Funk's motion to correct erroneous sentence is affirmed.

## II. *Motion to Set an Evidentiary Hearing*

■ Funk claims it was reversible error for the trial court to deny his request for an evidentiary hearing on his motion to correct an erroneous sentence. As our Supreme Court commented in *Gaddie v. State* (1991) Ind., 566 N.E.2d 535, 537, "[t]he purpose of [I.C. 35–38–1–15] is to provide prompt, direct access to an uncomplicated legal process for correcting the occasional erroneous or illegal sentence." As noted by the *Gaddie* court,

---

8. In *Higgins, supra,* 690 N.E.2d at 314, we also observed that the purpose of an information is to advise the accused of the particular crime charged, "so that he can be protected from being twice placed in jeopardy for the same offense." Funk does not raise the issue of double jeopardy in his appeal, and we fail to see how the variance between label and text in the charging information could possibly subject him to future prosecution for the same offense.

9. The information did use the phrase "drawing and using" a deadly weapon, in contrast to the statutory language "draws or uses" a deadly weapon. The distinction is insignificant. The statute sets forth acts which if committed will constitute the crime. The charge sets forth acts which were allegedly committed at a particular point in time. Either phrase forewarned Funk that he would have to defend against charges that "drew" and "used" a handgun.

I.C. 35–38–1–15 requires that a motion to correct an erroneous sentence be in writing and be supported by a memorandum of law specifically pointing out the defect in the original sentence. *Id.* at 537. In determining that the trial court was not obligated to conduct an evidentiary hearing, the court in *Gaddie, supra* at 537, wrote:

> "The allegation is supported by a written memorandum containing legal arguments in support of the motion as required by the governing statute. The allegation, however, does not raise an issue of fact requiring an evidentiary hearing. It is based entirely upon the records of the Court reflecting the sentencing procedures and resulting order. When the judge ruled that the sentence not be altered, he had in hand the written motion, the supporting written legal arguments, and the material court record. With all necessary materials in hand, the trial court properly ruled without appellant being personally present and without conducting a formal hearing."

Funk claims that, had an evidentiary hearing been held, he would have presented the trial court with instructions showing that the trial court had informed the jury that the charge against him was intimidation while armed with a deadly weapon. Funk does not explain whether the "charge" of intimidation as provided by the trial court incorporated the term "armed" in the label or text of the jury instructions. However, we need not scrutinize Funk's argument to that extent. He met the statutory requirements for a motion to correct erroneous judgment by providing a written motion and a memorandum of law in support thereof. In the motion, Funk provided copies of the charging information, jury verdict forms and the abstract of judgment. As noted *supra,* the State's response to the motion included a copy of the pertinent jury instruction. There was no need to go beyond the record to decide the motion. Extrinsic evidence simply was not required. Funk had a full and fair opportunity to provide copies of questionable jury instructions from the record, as he did with the aforementioned items referencing "armed" in the title of the charges against him. We are not required to reverse the trial court's decision merely to allow Funk a chance to correct his oversight in providing evidence of record. Similar to the court in *Gaddie,* we find that the trial court in the instant case had all the necessary information for deciding Funk's motion to correct erroneous sentence. We conclude that a formal evidentiary hearing on the motion was not required.

We hold that the trial court properly denied both Funk's motion to correct erroneous sentence and his motion for an evidentiary hearing thereon.

The judgment is affirmed.

RUCKER, J., and DARDEN, J., concur.